It pleases the court, your honors. My name is Mark Josephs and I represent the appellant Jeffrey Isaacs. The lower court here in this appeal awarded about $182,000 in fees against my client in favor of the large international law firm Gibson Dunn and Crutcher. In the trial court, in the matter that has been referred on the briefs, my client was really trying to realize his now 15-year quest to restart his medical career and he accused and he alleged that Keck School of Medicine violated the settlement agreement that he had entered into with them to resolve litigation involved in his departure from Keck. Is that the 2007 settlement agreement? Because the 2008 settlement agreement doesn't refer to the disciplinary records. I assume that's what the breach was about. Is that right? Yes, each each one was about that, your honor, and the 2008 settlement agreement is also about that. So do you read the 2008, well the 2008 settlement agreement doesn't have the specific language, or at least I didn't see it, that USC will not release or disclose Isaacs disciplinary records. Is that correct? Yes, your honor. Okay, so was the intent of the parties for the 2008 settlement agreement to preclude the enforcement of the 2007 settlement agreement? Because when I look at the language that USC relies on in the 2008 settlement agreement, it says that if Isaacs files a lawsuit based on events, acts, or ambitions prior to the date, he says through and including the date of the 2008 settlement agreement, then Isaacs is responsible for attorney's fees. And so if Isaacs brings a lawsuit based on the 2007 settlement agreement, is that something that is actionable by USC under the 2008 settlement agreement? Could you walk me through that? Sure, the 2007 agreement was against, involved the individuals that had been sued by Mr. Isaacs in the 2008 settlement agreement, I believe was with the institution. But the institution in that 2008 agreement also said that it dismissed any administrative or otherwise charges, known or unknown of any nature whatsoever. So Mr. Isaacs... But it doesn't say that it won't disclose them. There's no non-disclosure agreement in the 2008 settlement agreement. Well, but the language, you're right, your honor, but the language does say that essentially that these different charges and the different issues really don't exist anymore, so there would be nothing to disclose. Can I ask you, since the primary focus, at least from my perspective, is that the attorney fee issue, there's obviously the merits case that you're referring to, but why doesn't Section 1717A of the Civil Code apply to the 2008 settlement agreement, particularly when you keep in mind the California case of Stokas versus Mark? Well, your honor, it does not apply because, first, I'll distinguish Stokas. Stokas involved a landlord-tenant dispute where the landlord filed three different cases that were essentially the same, and between the second and third case, that the change was a technical change to fulfill a technical requirement. They were just saying they were trying to pay for him to death, and I must say, with all due respect to your client, that just seems to be what happened here. He just repeated, you know, dismissals and refilings and refilings and refilings and refilings, many of which had the same things there, and virtually all of them talked about items that, things that allegedly occurred before 2008. So tell me why Stokas doesn't provide a real, if you will, controlling law in this situation. Because, first, because Stokas involved very virtually identical claims. That did not happen with Mr. Isaacs. Mr. Isaacs' claim that was adjudicated below and was dismissed by the court was filed after Mr. Isaacs discovered in 2019 that USC and Keck had published the reason that his Keck dismissal on his American Association of Medical Colleges profile. Well, Counsel, with respect, I just want to address this, and you raised this. You say that you didn't file identical lawsuits. Looking at my review of the record, you're not the first four, but in March of 2019, your client sued USC, the DHMC, the Diesel School of Medicine at Dartmouth, New Hampshire Board of Medicine in the Central District, Gibson, Dunn, and so on. Eventually, and this is at SER 57-59, your client ultimately voluntarily dismissed the complaint. A few days later, this is at ER 56-228, he filed virtually the identical lawsuit again, which is the case we're dealing with right now. I understand he was upset. I get that. But it seems to me that, just like in Stokas, your client was trying to punish these people by papering them to death with repeated lawsuits that are largely the same, just slight changes, and in some cases, seemingly no changes at all. What am I missing? Your Honor, I'll answer that by saying your Honor's premise is incorrect, that the cases were not identical. The one that was adjudicated by the court below that is on appeal in the other documented matter involved the allegation that USC, before even they entered into the settlement, had published the fact of Mr. Isaac's attendance at Keck and his dismissal, and that that occurred after Dr. Isaacs or Mr. Isaacs realized that after those first two, the first complaint, the amendment complaint, were filed. You're talking about the merits aspect of the case, but the reality is each of these complaints, if I read it correctly, it certainly had something that occurred after 2008, but it also had, either by incorporation, by reference, or in Mike Verba, most of what happened occurred prior to 2008, which is what brings in the 1717A issue, does it not? I would disagree that most, actually most of it, postdated 2008. The portion of the final complaint that was filed that included the pre-2008 was based on USC's conduct. So essentially, USC can take advantage of their conduct and their disingenuousness in entering into a settlement agreement that they already were not abiding by in order to claim attorney's fees. That cannot be the case. What do we do with the concept that, let's just say you're correct, part of it deals with post-2008 action, but part of it also deals with pre-2008 action. The settlement agreement says we're not going to refer to this at all. Isn't that enough to bring in the attorney fees in this situation? No, because your honor, the part that involves the fraud was discovered by Mr. Isaacs in 2019. There was no way he could have brought an action about that earlier. So that date, the 2019 should be really the relevant date for him discovering the fraud and him being able to bring an action based on that fraud, even though some of that conduct predated 2008 in terms of USC's publication. Again, perhaps my records are incorrect, but I show four previous pieces of litigation, each of which refers to the same thing and the pre-2008 conduct. There's hardly any difference at all. Your honor, the first paragraphs of the final complaint do refer to what Mr. Isaacs discovered in 2019. He filed those other complaints before he discovered it, so it couldn't have included that. And the allegations are different if you go to the first several paragraphs of the final complaint. Clearly in part. Counsel, what I'm struggling with is that the great bulk of the complaints are essentially the same. There are changes. I confess that. And there are some new things, but most of it's the same. All these lawsuits just seem to be repetition of the same kinds of complaints, the same allegations. That's what I'm struggling with. You're almost out of one minute to respond after we hear from your opponent. Would that be okay? Yes, your honor. And one other thing in the last complaint, Gibson, Dunn, and Crutcher was added because of the campus ban issue that Mr. Isaacs wasn't even aware of and that he was told that he had been banned from campus. That was also included in the final complaint. It was not in the first complaint or the first amendment complaint that was voluntarily. Okay. Why don't you give us whatever you want in your one-minute rebuttal, but let's hear from, I'm sure I'm going to say this wrong, Guinness Orinion. Is that right? Very close. Genex Orinion. Okay. I apologize. I apologize for any goshery on that, but please proceed. That's okay. May it please the court. My name is Lori Genex Orinion, and I represent the court. The first is the applicability of the fees provision here. Second is the substantial similarity between the prior case and the subsequent case and why the district court was correct to consider them to be one continuous case. Could I start with a question about 1717A? So that one refers to an accident on the contract where the contract specifically provides that attorney's fees and costs incurred to enforce that contract shall be awarded to either one of the parties and it's awarded to whoever is prevailing. But the attorney's fees provision in the 2008 settlement agreement does not specifically provide that an action on the contract is implicated. It's about filing a case. So why is 1717A applicable here? Could you walk me through that? Yeah. So let me take a step back. We talked about 1717A as a juxtaposition against a B and why B2 was not relevant. But as a general matter under California law, the court is going to look to the party's agreement to determine whether or not attorney's fees are awardable. Could you just go to 1717A? That was my question. 1717A doesn't seem to match up with the language of paragraph 6. So explain to me why it does. That's true. It doesn't match up. But I don't think that Stokes v. Marsh and the other cases are only tied to this idea of 1717A. So let me ask you about paragraph 6. So this talks about if he files a lawsuit based on events, acts, or admissions, essentially before the 2008 settlement agreement is signed. Is it your understanding that in entering the 2008 settlement agreement, he could no longer bring an action for breach of the 2007 settlement agreement? Yeah. So that's an interesting question. I think if there was a breach between when the 2007 settlement agreement was signed and when the 2008 settlement agreement was signed, any breach in that time period predating the 2008 settlement agreement, he would not be able to bring a claim on because all claims prior to 2008 were released. And then as part of that, he was not allowed to bring a claim. So your position is that in entering the 2008 settlement agreement, Isaacs could no longer enforce the 2007 settlement agreement. And that was the intent of the parties. Is that correct? Yes. He could not enforce any breach of that agreement, again, predating 2008. So let's say, for example, USC took the entire disciplinary file, and after the 2008 settlement was entered into, disseminated that about in violation of the 2007 agreement. I think that would still be actionable. Why is that? If the 2008 settlement agreement says he can't bring a lawsuit on anything that predates that settlement agreement, wouldn't that include, by your hypothesis, that would include a breach of the 2007 settlement agreement? I mean, I can't see that that's possibly what the parties intended. So let's assume for the moment that he can bring an action based on the breach of the 2007 settlement agreement. And that's certainly a large portion of his complaint. Why is that barred? Why is under Section 6 of the 2008 settlement agreement, why are you entitled to attorney's fees for his action for breach of the 2007 agreement? Can you walk me through the language of Section, Paragraph 6, and explain why? Yeah. So just to be clear, Section 6 was part and parcel of multiple sections in the 2008 agreement that USC drafted to ensure that anything leading up to the 2008 settlement agreement was no longer an issue, and that included any breach of the 2007 agreement. So Section 6 is entitled, no other and future lawsuits, charges, claims, or complaints of any nature whatsoever predating the 2008 settlement agreement. Oh, so wait. So now you're going back to say that USC is entitled to breach the 2007 agreement and Isaacs can't enforce it. Could you please be clear about what your position is? Was that the intent of the parties, that he could not, that Isaacs could not enforce the 2007 settlement agreement? So USC did not believe it had breached anything, and still does not believe it had breached the 2007 settlement agreement when it entered this into this agreement. Isaacs is saying that it did now, and this Paragraph 6, and this 2008 settlement agreement completely said that any claim that he would have up to and including the 2008 date of the claims, and the release is in Paragraph 7, the known or unknown waiver is in Paragraph 9, and then in Paragraph 16 of the 2008 settlement agreement, there's also a paragraph that talks about newly discovered facts, and that even if Isaacs learns that USC had breached before the 2008 agreement, he cannot bring a claim on that. And so what they were trying to do in terms of this being a global settlement, is fully resolve any claim that Isaacs may, may not have up to and including the 2008 settlement agreement. And so again, if, if his claim is that USC breached the 2007 settlement agreement, the minute it was signed, if that's true, and that's, that's what he claims, then that claim of his was released by the global 2008 settlement agreement. There's no, and the 2008 agreement doesn't preclude USC from disclosing his disciplinary record. So your view is that USC is now free to disclose whatever they want to about his disciplinary record, and there's no way for him to have recourse for that. Is that your position? So really, I, I haven't considered that issue if, if that is the way the court considers it to be. I'm asking for your reading of the settlement agreement. So what I just said was 2008 releases all prior obligations of USC, and the 2008 settlement agreement itself doesn't require confidentiality, non-disclosure. So you're saying USC no longer has an obligation. That's how I understand your argument. So it releases all claims. I, I don't know what the, Judge Aikuda, I'm sorry, I don't know what you're referring to about releasing any and all obligations on the part of USC. Well, 2008 has a non, the 2007 agreement has a non-disclosure agreement, and the 2008 settlement agreement does not. And the 2008 agreement says you can't bring an action for any prior obligation, right, in the Evander Act, which would include the 2007 settlement agreement. So USC has relieved itself of any obligation not to disclose a disciplinary record. That seems to be the import of your reading, and I just wanted to see if that was how, in fact, you read the two agreements together. So I think that's how it could be read. But again, I, would, would a reference to any breach of the 2007 agreement be based on referring to or incorporating events prior to the date hereof? Yes. And so I think arguably Section 6 then applies to any breach of the 2007 agreement. The release, the release of claims, though, is, is focused on, on claims, not obligations. And so I see what you're saying. I think the, the release and Paragraph 6 get at two slightly different things. Let me just ask one question here. As I look at the, the agreement, and this is certainly the way the District Court interpreted it, the, the, the agreement says that if, if IDES violates the provisions of filing any lawsuit, charges, claim for arbitration, et cetera, et cetera, et cetera, then it's the, based on, based on any events and acts or omissions through or including the date hereof, then he pays the cost of the attorney. The District Court took the position that because much of the gravamen of the allegations that he made in these various fora were about pre-2008 events, that that was what was included here. Correct. As I read this document, SC wanted to buy peace from Mr. Isaacs. They knew he was upset. They were less concerned about what they were going to file, and he apparently was less concerned about it, but it was designed to protect the University and then later others from his filing multiple lawsuits, which they guessed right was going to happen. So, doesn't the agreement actually reflect what the parties did? They were really concerned, and he didn't really argue it, what rights he might have. He didn't bargain for that. The language provides that the University was going to be protected from what he did. Right. That, that's correct, Your Honor. And, you know, all of these provisions in this agreement that I've referenced in 2008, they were put in there because even at that time, and Plaintiff admits this, he had proven himself to be litigious. You know, he talked about the 2007 litigation and the negotiations over the settlement as being protracted, lengthy, etc., and so part of what USC was trying to do here with all of these different provisions was just bootstrap everything to make sure that Plaintiff understood, even as a layperson, that they were done in terms of their relationship and claims that could be brought against USC. Okay, Don, the time is up. Let me ask my colleague whether either has additional questions for the University on this. I do not. Very well. Mr. Jacob, do you have a little rebuttal time? Yes, thank you, Your Honor. On that point, frankly, factually, it was Dr. Isaacs that was negotiating the protection in those agreements so that he could restart his medical education somewhere else, which he did. And then he went to Dartmouth, and Dartmouth apparently found out about tech probably through the AAMC profile, and that led to problems with him at Dartmouth. Now, Dr. Isaacs, Mr. Isaacs informed me that he in the court actually asked the judge in 2008 whether that the 2008 agreement would prevent enforcement of the 2007 agreement, was told no, and that USC filed something clarifying that that was the case. I don't have that document on the record because I didn't expect this to come up. And just to repeat, the differences between the voluntarily dismissed case and the one that was adjudicated below was that first, that the AAMC profile disclosure was named first in that second case, not the voluntarily dismissed case. That voluntarily dismissed case never raised that issue because Mr. Isaacs was not aware of. And second, the campus ban issue had come up in the meantime, and Gibson Dunn was added as a defendant because of that issue, and that issue was not in the complaints. And those are two rather large issues for Mr. Isaacs, and that those are the differences between the complaints, and they were not just a continuation and identical. Okay, very well. Any additional questions for Mr. Jacobs, Vlad, or my colleague? We thank Jason, Mr. Joseph, I apologize. We thank both counsel for your argument in this case. The case of Isaacs versus USD Peck Medical School is submitted, and we'll now hear argument in the case of Kipperman versus Gropstein.
judges: M. Smith, Ikuta, Steele